UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| WILLIAM L. MONTGOMERY,         ] | |
| ] | |
| Plaintiff,         ] | |
| ] | |
| vs.         ] | CV-02-CO-01843-W |
| ] | |
| UNITED STATES POSTAL SERVICE,         ] | |
| JOHN E. POTTER, POSTMASTER         ] | |
| GENERAL, in his official capacity,         ] | |
| ] | |
| Defendant.         ] | |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came before the Court for trial without a jury on the 18th day of April 2005. The Court, having heard the testimony of the witnesses, received and reviewed all of the evidence, including the stipulations, and having heard the arguments of the parties, makes the following findings of fact and conclusions of law:

Findings of Undisputed Facts

The following facts were undisputed:

1. Plaintiff William L. Montgomery was born on July 29, 1952. He graduated from Northside High School in Samantha, Alabama, in 1970,

and holds separate Bachelor of Science degrees in Chemistry and Chemical Engineering from the University of Alabama in Tuscaloosa, Alabama.

2. In October of 1994, Mr. Montgomery took the U.S. Postal Service's entrance examination for distribution and delivery positions. He scored an 88.50 and received a rating of "eligible." Mr. Montgomery was added to the U.S. Postal Service's "hiring registers" for the positions of clerk and carrier at the Fayette, Northport, and Tuscaloosa, Alabama, post office locations. These were entrance level positions for which no experience was required and Mr. Montgomery met the physical requirements for the positions.

3. According to Postal Service Handbook EL-312, a "register" is a system of records that contains applicant examination ratings, the results of an evaluation process, or both. The Postal Service uses registers as a source of qualified candidates from which to select and appoint new employees.

4. Appointing (or selecting) officials are responsible for determining job vacancies at particular post offices and are responsible for selecting applicants for appointment to those vacant positions. The registers are

used by the Postal Service's Human Resource Department to compile a list of eligible applicants to be certified on what is called a "hiring worksheet." The list of certified eligible applicants [the hiring worksheet] is then sent to the selecting official for the postal facility at issue and interview notices are sent to each eligible applicant on the hiring worksheet.

5. It is Postal Service policy to screen applicants for employment "eligibility" and "suitability" prior to "considering" that applicant for appointment to a postal position. Applicants who are found to be ineligible or unsuitable for employment are made inactive on the hiring register.

6. An applicant who is not suitable is disqualified from consideration for employment. An applicant that is determined to be ineligible or unsuitable for a position, and thus disqualified, is not to be included among those available for consideration on the hiring worksheet.

7. The selecting official is required to make a selection for a position from among the three highest rated applicants available for the type of appointment being offered from the appropriate register. Selecting officials are required to select the applicant whose qualifications make

them the best fit for the positions for which they are being considered. In order to do this, they must use the rule of three when making selections.

8. The "rule of three" is described in the selection manual as follows: "For the first vacancy, the appointing official selects from among the three highest on the hiring worksheet who are available for the position to be filled. If more than one vacancy is available, eligibles not selected in filling the first vacancy and the next available eligible on the hiring worksheet are then considered. An eligible who has been considered three times for the same job category, and not selected, is not considered again for the job category and installation. However, the eligible's name remains on the active register until considered three times for other job categories and installations for which the register is used."

9. Handbook EL-312 discusses the "eligibility" requirements of an applicant, which include: (1) age requirements (generally, a minimum age of 18), (2) restrictions on the employment of relatives, and (3) selective service registration (for male applicants). "Suitability"

criteria for candidates include: (1) conscientiousness, (2) adaptability, (3) cooperation, and (4) communication.

10. Favorable eligibility and suitability decisions make it possible for the applicant to advance in the hiring process.  This means the applicant can be considered, and if selected, given a bona fide job offer followed by a medical assessment.

11. Between the dates of June 20, 1995, and November 16, 1998, the plaintiff was called in approximately eleven (11) times to interview for vacant clerk and/or carrier positions with the Postal Service.

12. During this time period, Mr. Montgomery was certified and appeared on approximately nine "hiring worksheets" where he was in the group of top three candidates ("group of three") for eleven (11) different positions.  Mr. Montgomery was "considered" for these eleven positions but was "non-selected," or passed over for someone else, for each position.

13. On or about June 20, 1995, Mr. Montgomery was within the group of three that was considered for the position of carrier.  Michael Sullivan was selected over Plaintiff.  The selecting official was Jimmy E. Barker.  At the time of the selection, Mr. Sullivan was 30 years of age,

whereas Plaintiff was about to turn 43 on July 29, 1995.  The starting hourly rate for this position was $12.59 per hour.  The number of hours worked weekly in this position would average to 40.

14. On or about August 3, 1995, Mr. Montgomery was within the group of three that was considered for the position of carrier.  Janice Oden was selected over Plaintiff.  The selecting official was Jimmy E. Barker.  At the time of this selection, Ms. Oden was 32 years of age, and Plaintiff was age 43.  The starting hourly rate for this position was $12.77 per hour.  The number of hours worked weekly in this position would average to 40.

15. On or about January 17, 1996, Mr. Montgomery was within three separate groups of three that were considered for the position of carrier.  Freddy Long, Terri Horner, and Nikki Warren were each selected over Plaintiff.  The selecting official was Robert Hoffman. Mr. Long's age has not been stated by Defendant.  At the time of the selection, Ms. Horner was 28 years of age, Ms. Warren was 21 years of age, and Plaintiff was age 43.  The starting hourly rate for this position was $12.77 per hour.  The number of hours worked weekly in this position would average to 40.

16. On or about February 2, 1996, Mr. Montgomery was within the group of three that was considered for the position of clerk. Charles Fuller was selected over Plaintiff. The selecting official was Robert Hoffman. At the time of his selection, Mr. Fuller was 23 years of age, and Plaintiff was age 43. The starting hourly rate for this position was $12.77 per hour. The number of hours worked weekly in this position would average to 40.

17. On or about February 15, 1996, Mr. Montgomery was within the group of three that was considered for the position of clerk. Tommie Smith was selected over Plaintiff. The selecting official was Robert Hoffman. At the time of her selection, Ms. Smith was 27 years of age, and Plaintiff was age 43. The starting hourly rate for this position was $12.77 per hour. The number of hours worked weekly for this position would average to 40.

18. On or about January 2, 1997, Mr. Montgomery was within the group of three that was considered for the position of carrier. Jennifer Killingsworth was selected over Plaintiff. The selecting official was Jimmy E. Barker. At the time of her selection, Ms. Killingsworth was 26 years of age, and Plaintiff was age 44. The starting hourly rate for

this position was $13.03 per hour. The number of hours worked weekly in this position would average to 40.

19. On or about April 1, 1997, Mr. Montgomery was within the group of three that was considered for the position of clerk. Brandy Swinney was selected over Plaintiff. Robert Hoffman was the selecting official. At the time of this selection, Ms. Swinney was 22 years of age, and Plaintiff was age 44. The starting hourly rate for this position was $13.51 per hour. The number of hours worked weekly in this position would average to 40.

20. On or about December 22, 1997, Mr. Montgomery was within the group of three that was considered for the position of carrier. April McMillan was selected over Plaintiff. The selecting official was Susan Rigsby. At the time of her selection, Ms. McMillan was 22 years of age, and Plaintiff was age 45. The starting hourly rate for this position was $13.42 per hour. The number of hours worked weekly in this position would average to 40.

21. On or about November 16, 1998, Mr. Montgomery was within the group of three that was considered for the position of clerk. Chad Trull was selected over Plaintiff. The selecting official was Susan Rigsby. At the

time of this selection, Mr. Trull was 25 years of age, and Plaintiff was over the age of 46. Mr. Trull and Plaintiff had the same score on the hiring worksheet. The starting hourly rate for this position was $13.61 per hour. The number of hours worked weekly in this position would average to 40.

## Discussion of Disputed Issues

Plaintiff William L. Montgomery filed suit against the defendant for discrimination[1] under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.* Under the ADEA, it is "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (quoting 29 U.S.C. § 623(a)(1)). "When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.'" *Reeves v. Sanderson Plumbing*

---

[1] On January 23, 2004, Plaintiff amended his complaint to add a cause of action for retaliation under the ADEA. (Doc. 36.) Plaintiff's claim of retaliation was subsequently dismissed voluntarily, and only Plaintiff's allegations of discrimination under the ADEA remain before this Court.

*Products, Inc.*, 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggens*, 507 U.S. 604 (1993)). "That is, the plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.'" *Id*.

At trial, the defendant asserted that Mr. Montgomery was not hired because of legitimate, nondiscriminatory reasons. Specifically, the defendant presented evidence, through witnesses and exhibits, that Plaintiff was not hired because interviewers concluded that he was arrogant, did not work well with others, was not a "team player," and otherwise did not have the personality to work well with the public.

The plaintiff, who was apparently relying upon the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248 (1981), to prove intentional discrimination based upon circumstantial evidence, thus became obligated to demonstrate "that the proffered reason[s] [were] not the true reason[s] for the employment decision[s]." *Burdine*, 450 U.S. at 256. "[He] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."

*Id*. at 256.  Plaintiff testified in an effort to meet his burden of demonstrating pretext, but was unsuccessful.[2]

"The ultimate burden of persuading [this Court] that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.  The defendant's intent in this case is the "ultimate question." *Id*.  After full consideration of the evidence in this case, it is this Court's conclusion that the defendant did not intentionally discriminate against the plaintiff for any reason prohibited by law. Plaintiff's age did not play any role in the defendant's decisions to not hire him.

## Conclusion

---

[2]Plaintiff complained that the defendant, in its responses to discovery, failed to specify the reasons it subsequently presented at trial for its hiring decisions.  The defendant had previously argued that Plaintiff was simply not the best fit for the job.

The Court notes, however, that the plaintiff did receive as part of discovery many, if not all, of the exhibits admitted at the time of trial, which evidenced some of the interviewers' rationales for their decisions.  In addition, at least one of the interviewers was questioned by an attorney representing the plaintiff long before the trial.

If the plaintiff felt Defendant's responses to discovery were incomplete or otherwise inadequate, he should have brought that to the attention of the Court through a properly filed discovery motion.  However, in an abundance of caution, the Court nonetheless allowed the plaintiff to present his evidence of intent (including any evidence of pretext) after the defendant concluded its evidentiary presentation.  This allowed the plaintiff to know exactly what the defendant proved (or attempted to prove) before he was required to provide his evidence of intent.  Despite this strategic advantage, the plaintiff was unable to carry his burden of proving that age played a role in the defendant's decisions to not hire him.

For the reasons stated above, judgment is due to be entered in favor of the defendant and against the plaintiff.  A separate order consistent with this opinion will be entered.

Done this 28th day of April 2005.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153